UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
:
FELICIA DIXON, :
:
                Plaintiff, :      08-cv-532 (JJMC)
:
      -against- :      (ECF Case)
:
CURTIS KUBIAK; BRUCE WERNER; :
T. MOLISONI; GARY BAUGHER; :      SECOND AMENDED COMPLAINT
MICHAEL HIGGINS; JEAN :
SLAWATYCKI; ROBERT :      JURY TRIAL DEMANDED
KIRKPATRICK; and FNU EDWARDS, :
:
                Defendants. :
:
:
---------------------------------------------------------X

## FIRST AMENDED COMPLAINT

      1.      Plaintiff Felicia Dixon, an inmate who was sexually harassed, sexually assaulted, and raped at Albion Correctional Facility, brings this action for money damages to redress defendants' violations of her rights under the Eighth, and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.

      2.      Plaintiff brings this action against the individual officer Curtis Kubiak ("Kubiak") who raped her, against the correctional staff who directly participated in and/or conspired in her rape and sexual mistreatment, and against the correctional staff and supervisors who participated in and/or established a pattern and practice of official tolerance for and/or deliberate indifference to the sexual harassment, sexual assault, and rape of the plaintiff and of other female inmates by corrections officers, including prior

rapes and sexual misconduct committed by Kubiak, the same corrections officer who raped Plaintiff.

## JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

4. Venue is proper in the United States District Court for the Western District of New York pursuant to 28 U.S.C § 1391(e) because Plaintiff resides within the district.

## PARTIES

5. Plaintiff Felicia Dixon ("Plaintiff") is a female resident of the County of New York, State of New York. At all relevant times, Plaintiff was an inmate under the custody of the New York State Department of Correctional Services ("DOCS") at Albion Correctional Facility ("Albion" or "the facility") in Albion, New York. During all relevant times Plaintiff resided primarily in the N-2 unit at Albion.

6. Defendants Robert Kirkpatrick ("Kirkpatrick") and FNU Edwards ("Edwards") are sued in their individual capacities. On information and belief, Kirkpatrick succeeded Edwards as Superintendent of Albion Correctional Facility. At all relevant times, Kirkpatrick and Edwards had primary supervisory responsibility over the facility, its employees, and inmates. At all relevant times, Kirkpatrick and Edwards were the immediate supervisors of defendant Jean Slawatycki, Deputy Superintendent of Security at Albion. In their supervisory capacities, Kirkpatrick and Edwards were further responsible for establishing the polices of DOCS at Albion, and for training and supervising defendants and the other employees at the facility. Kirkpatrick and Edwards were further responsible for establishing and/or enforcing the customs and practices with regard to sexual contact and conduct between employees and inmates at Albion.

7.  Defendant Jean Slawatycki ("Slawatycki") is sued in her individual capacity. Upon information and belief, Slawatycki was at all relevant times Deputy Superintendent of Security at Albion, and was primarily responsible for supervising defendants Kubiak, Bruce Werner, T. Molisoni, Gary Baugher, and Michael Higgins. She was further responsible for enforcing the policies of DOCS at Albion, and for training and supervising defendants and the other employees at Albion. She was responsible for establishing and/or enforcing the customs and practices with regard to sexual contact and conduct between employees and inmates at Albion.

8.  Defendant Gary Baugher ("Baugher") is sued in his individual capacity. Upon information and belief, Baugher was at all relevant times employed as a sergeant at Albion with supervisory responsibility over subsidiary officers and inmates. In his supervisory capacity, Baugher was responsible for establishing and/or enforcing the customs and practices with regard to sexual contact and conduct between employees and inmates at Albion.

9.  Defendants Kubiak, Bruce Werner ("Werner"), T. Molisoni ("Molisoni"), and Michael Higgins ("Higgins") are sued in their individual capacities. Upon information and belief, defendants Kubiak, Werner, Molisoni, and Higgins were at all relevant times corrections officers at Albion. At all relevant times, their duties included, but were not limited to, ensuring the safety of inmates at Albion. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOCS.

**CONFIDENTIAL WITNESSES**

10.  At all relevant times, Confidential Witness I ("CW I") was an inmate at Albion Correctional Facility. She first arrived at the N-2 unit in Albion in or

around January or February of 2005. She remained at Albion, primarily in the N-2 unit, until approximately late September 2005.

11. At all relevant times, Confidential Witness II ("CW II") was an inmate at Albion Correctional Facility. She first arrived at the N-2 unit in Albion in or around June 2004. She remained at Albion, primarily in the N-2 unit until approximately 2006.

## FACTS

12. At all relevant times defendants were acting under color of state law.

*Long-Standing Culture of Sexual Misconduct at Albion*

13. Defendant Kubiak raped Plaintiff on or about September 7, 2005.

14. Prior to the rape of Plaintiff, there existed an ongoing and widespread pattern and practice of sexual misconduct and sexual harassment by corrections officers against inmates at Albion.

15. Upon information and belief, during the relevant time period, there were more reports about incidents of officer sexual abuse at Albion than at other women's facilities.

16. Upon information and belief, during the relevant time period, the Orleans County Police Department arrested correctional staff for having sexual relations with inmates approximately every six (6) months at Albion and Orleans Correctional Facilities. For example,

(a) In or around 2000, a former Albion guard, Robert Kozak, was convicted on charges related to his having had sex with a female inmate at Albion;

(b) In or around 2002, Officer Schmidt was convicted of third-degree rape for having sexual relations with an inmate at Albion;

(c) In or around 2002, Officer Galbreath was convicted for having sexual relations with an inmate at Albion;

(d) In or around 2003, a state-employed painter who had been employed at Albion since 1992 was convicted of sodomy for having sexual relations with inmates at Albion;

(e) In March 2005, Albion corrections officer Jerryl Reele pleaded guilty to two counts of sexual misconduct for having sexual relations with an inmate at Albion;

(f) In or around 2005, Aaron S. Sklener, was charged with two misdemeanors for having sexual relations with an inmate at Albion — second-degree sexual abuse and official misconduct;

(g) In or around 2005, James F. Sklener was charged with felony third-degree intimidating a victim or witness and misdemeanor official misconduct for trying to cover up the rape by his son Aaron Sklener of an inmate at Albion; and

17. Upon information and belief, during the relevant time period, sexual harassment, including the use of verbal sexual epithets and voyeurism, was widespread at Albion.

18. Defendants were aware of and failed to take adequate steps to remedy and/or were deliberately indifferent to the sexual harassment and sexual abuse of inmates by correctional staff.

19. Sexual relationships between inmates and staff were so widespread that it was common knowledge among Albion officers and supervisors that such relationships were occurring. On information and belief, many of the officers and supervisors at Albion during the relevant time period were related and/or were close friends and/or attended high school together. As a result, these officers and supervisors covered for one another, purposely ignored, and/or facilitated sexual relationships between staff and inmates.

20. Defendants were also made aware of the widespread sexual harassment and sexual abuse of inmates by corrections officers by, *inter alia*, the number of inmate grievances filed concerning staff sexual misconduct at Albion.

21. Defendants were also made aware of the widespread and rampant sexual abuse and sexual harassment of inmates by correctional staff by, *inter alia*, the criminal and civil lawsuits filed concerning such conduct and by other public investigations and reports concerning such conduct. S*ee, e.g., Kidd* v. *Andrews*, 340 F. Supp. 2d 333 (W.D.N.Y. 2004); *Amador* v. *Superintendents of Dep't. of Corr. Servs.*, 2005 WL 2234050(S.D.N.Y. 2005); *Thomas* v. *Andrews*, 2006 WL 2827682 (W.D.N.Y.2006).

22. Despite the complaints, lawsuits, and criminal convictions at Albion related to sexual abuse and harassment of inmates by correctional staff, defendants failed to take adequate steps to ensure the safety of the inmate population and instead allowed the abuses to continue and fostered an environment where inmates who complained about officers were retaliated against or ignored.

23. For example, according to CW II, when defendant Andrews would make rounds, inmates would try to inform Andrews of officer sexual misconduct. Defendant Andrews would ignore the inmates or tell them that they must be remembering details incorrectly.

*Prior Incidents of Sexual Misconduct Involving Defendant Kubiak*

24. Kubiak had sexual intercourse with at least five (5) other inmates in addition to Plaintiff. Those inmates were Karolyn Lawson, Vickie Tolbert-Dwyer, an inmate believed to be named Vanessa Sarubi, an inmate nicknamed "Katy," and an inmate believed to have the last name Vasquez.

25. In addition to the inmates with whom Kubiak had sexual intercourse, Kubiak maintained close relationships with other female inmates. He would provide these inmates with contraband, including but not limited to red hair dye, untaxed cigarettes, alcohol, and drugs, in exchange for favors. These favors included facilitating sexual relationships between Kubiak and inmates.

26. Inmates "dropped tabs" and lodged complaints about Kubiak as early as January or February 2005. Inmates were sometimes moved out of the N-2 unit as a result of these complaints, but Kubiak remained employed in N-2.

*Kubiak's Sexual Relationship with Lawson*

27. Some time between January 2005 and September 2005, CW I observed Kubiak having unprotected sex with Lawson in the bathroom and laundry rooms of the N-2 and/or N-1 units. During the relevant time period, CW II observed Lawson having oral sex with Kubiak at the officer's station in the N-2 unit.

28. According to CW I, inmates filed tabs with defendant Slawatycki regarding the relationship between Lawson and Kubiak. In response to these complaints,

on information and belief, Lawson was transferred to a different unit, but Kubiak remained employed in N-2.

29. Defendant Higgins intercepted a love letter another inmate, Leona Brooks ("Brooks") was conveying from Lawson to Kubiak. After reading the letter, Brooks then observed Higgins place the letter into Kubiak's locker.

30. Defendant Higgins also intercepted tabs by prisoners reporting Kubiak's conduct. Higgins would give the tabs to Kubiak rather than reporting the tabs to supervisors.

31. Brooks approached defendant Sgt. Gary Baugher in or around August or early September 2005 about Kubiak and Lawson. Defendant Baugher told her "he did not want to hear it."

*Kubiak's Sexual Relationship with Tolbert-Dwyer*

32. During the relevant time period, defendant Kirkpatrick received an anonymous complaint that Kubiak was having sex with inmate Tolbert-Dwyer. Kirkpatrick admitted to police officers during the investigation into the rape of Plaintiff by Kubiak that as of September 7, 2005, neither Tolbert-Dwyer nor Kubiak had been approached regarding the allegations.

*Kubiak's Sexual Relationship with Sarubi*

33. During the relevant time period, CW I observed Kubiak having sex with Sarubi in the bathroom and/or laundry rooms in N-1 and/or N-2.

*Kubiak's Sexual Harassment and Retaliation Against CW I*

34. In or around the fall of 2005, an inmate "dropped a tab" about Kubiak having sexual relations with inmate Karolyn Lawson. Kubiak told inmate Brooks that he believed CW I had dropped the tab. Kubiak asked Brooks to physically harm CW

I in retaliation.  He provided Brooks with contraband as payment.  In or around the fall of 2005, Brooks attacked CW I in the shower around 11 p.m. when Kubiak was on duty.

35. In the course of an inspector general investigation into the above incident, Brooks admitted to the facts alleged in the preceding paragraph.

*The Sexual Harassment and Rape of Plaintiff*

36. On or about July 31, 2005, defendant Kubiak engaged in impermissible physical contact when he initiated an on-going sexual relationship with Plaintiff.

37. When defendant Kubiak wanted to engage in impermissible physical contact with Plaintiff, he would usually send defendant Werner to Plaintiff's cell in the middle of the night.  Werner would wake the plaintiff and escort her to Kubiak, who was usually waiting in the N-2 and/or N-1 laundry room.

38. CW II was paid by Kubiak in contraband to stand guard for him when he had sex with Dixon and Lawson.  CW II would guard the laundry room where Kubiak and his victims had sexual relations.  CW II observed defendant Werner on several occasions leave his post to escort Dixon to the laundry room where Kubiak was waiting.

39. On or about the last week of July or the first week of August 2005, when defendant Werner entered Plaintiff's cell and informed her that Kubiak wanted to see her, Plaintiff informed Werner that she would not go with him to see Kubiak that night, and she remained in her cell.

40. On or about August 9, 2005, defendant Molisoni, lodged false disciplinary allegations against Plaintiff in retaliation for Plaintiff denying Kubiak's

request for sexual relations.  As a result of the false disciplinary allegations, Plaintiff was wrongfully placed in keeplock for a period of fifteen (15) days.

41. Defendant Molisoni admitted to CW II that he had retaliated against Dixon, and he warned CW II that the same thing would happen to her if she complained about Albion officers.

42. After her period of keeplock expired, Plaintiff was placed back in the N-2 unit at Albion.  After her return to N-2, on or about September 7, 2005, defendant Werner entered her cell in the middle of the night and informed her that Kubiak wanted to see her.  Werner escorted Plaintiff to the N-2 or N-1 laundry room where Kubiak was waiting, and where Kubiak then raped Plaintiff.

43. On or around the morning of September 7, 2005, Plaintiff reported the rape and was hospitalized.  She was returned to Albion the same day after being discharged from the hospital.

44. Upon her return to Albion from the hospital, Plaintiff was placed in the Special Housing Unit ("SHU").  In the SHU, Sgt John Doe II physically assaulted the plaintiff in retaliation for her reporting Kubiak.

45. The plaintiff was transferred from Albion to Bayview Correctional Facility on or around September 7, 2005.

*Criminal Charges Against Kubiak*

46. As a result of his rape of the plaintiff, on or around September 13, 2005, Kubiak was charged with Rape in the Third Degree, a felony; Official Misconduct, a misdemeanor; and Promoting Prison Contraband in the Second Degree, a misdemeanor.

47. The District Attorney's office stated that it would not agree to a plea agreement unless such agreement was acceptable to DOCS.

48. On or about November 16, 2005, Kubiak pleaded guilty to Sexual Misconduct and Official Misconduct, both misdemeanors. As part of the plea allocution, Kubiak admitted to having sexual intercourse with the plaintiff on September 7, 2005. He also admitted to giving contraband to an inmate to deliver to Karolyn Lawson.

49. Despite his criminal conviction and abhorrent conduct, Kubiak was not fired. Instead, as part of the plea agreement, Kubiak was permitted either to retire or to resign from his job at Albion. He no longer works at Albion.

50. Kubiak was sentenced on or about February 15, 2006. He was sentenced to three (3) years probation.

## **LEGAL CAUSE OF ACTION**

### **EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

51. As against all defendants, Plaintiff repeats and reallges paragraphs 1-49 as though fully set forth herein.

52. Defendant Kubiak's sexual assault and sexual harassment of Plaintiff, the acts and omissions of defendants regarding the rape and sexual harassment of Plaintiff by Kubiak, and the pattern and practice and deliberate indifference of defendants to the rape and sexual harassment of inmates at Albion and the Plaintiff constituted cruel and unusual punishment in violation of the Eighth Amendment.

53. The deprivations of Plaintiff's rights describe herein were not reasonably related to the furtherance of any legitimate interest in security or any other legitimate interest.

54. Defendants' actions and omissions caused Plaintiff to endure substantial and unnecessary discomfort, pain, humiliation, and physical injury.

**JURY DEMAND**

55.     Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

56.     Plaintiff seeks a judgment:

a.      awarding Plaintiff compensatory damages jointly and severally from each defendant;

b.      awarding Plaintiff punitive damages from each defendant;

c.      awarding Plaintiff attorneys' fees as well as costs and disbursements incurred in this action; and

d.      granting such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
        August 26, 2008

                                        /S/ Amy E. Howlett

                                        _____
                                        Amy E. Howlett (AH-9112)
                                        125 Broad Street
                                        New York, New York 10004-2498
                                        (212) 558-4000